UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Eugene S. McClelland,

Plaintiff,

vs. MINUTE ORDER

Pharmacia Corporation,
f/k/a Monsanto Company, a
Delaware corporation

Defendant. Civ. No. 00-1505 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of April, 2001.

* * *

On March 29, 2001, the Court heard argument on the Plaintiff's Motion to Compel. At the time of the Hearing, the Plaintiff appeared by Daniel J. McGarry, Esq., and the Defendant appeared by Wayne K. McNeil, Esq. For the reasons expressed at the Hearing, and briefly summarized below, the Plaintiff's Motion is granted in part, and denied in part.[1]

---

[1]At the time of the Hearing, the parties advised that they had resolved the bulk of their discovery disputes which precipitated the Defendant's Motion to Compel, that is scheduled to be heard on April 12, 2001. Nevertheless, the Plaintiff sought the Court's guidance as to whether he should produce his Schedule F tax forms for the period from 1996-1999. As we expressed at the Hearing, in our view, the Plaintiff's Schedule F tax forms are relevant, as they may provide information that will enable the Defendant to
(continued...)

FILED APR - 2 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural Background

This lawsuit involves the alleged improper use of a herbicide known as Roundup Ultra, which is manufactured by the Defendant, and which was employed on the Plaintiff's farm. According to the Plaintiff, sometime in the Spring or early Summer of 1999, he contacted his local feed supplier, and informed the owner, Jeff Patnode ("Patnode"), that he wanted to grow winter wheat on his farm that season, and that he wanted to prepare his field using Roundup Ultra herbicide. Patnode alleges that he informed the Defendant's regional retail sales manager, Kris Moody ("Moody"), of the Plaintiff's intentions. As argued by the Plaintiff, during the ensuing conversation, Moody informed Patnode that, in order to grow Winter wheat, the Plaintiff should apply Roundup Ultra herbicide to his fields during the first two weeks of June of 1999. However, the Plaintiff contends that Moody failed to inform Patnode that the Roundup Ultra herbicide would kill only those weeds that had already emerged from the ground, at the time of application. According to the Plaintiff, when he attempted to plant his Winter wheat several months later, his fields were consumed in weeds that had

[1](...continued)
verify the accuracy of the Plaintiff's damages calculation. As such, the Plaintiff is directed to produce these forms to the Defendant.

regrown after the application of the Roundup Ultra herbicide, thereby preventing his Winter wheat from being planted.

In response to these accusations, the Defendant argues that, prior to the sale of the Roundup Ultra herbicide, Moody was asked by Patnode to visit the Plaintiff's fields for a consultation. However, because of prior commitments, Moody could not visit the Plaintiff's farm and, therefore, she consulted with the Plaintiff by telephone. According to the Defendant, during this conversation, the Plaintiff informed Moody that he wanted to rid his field of existing weeds in order to prepare them for the planting of Spring wheat. Subsequently, in July of 1999, Moody was called to the Plaintiff's farm for an inspection of the weed problem he was experiencing. The Defendant alleges that the Plaintiff, then, for the first time, informed Moody that he had wanted the Roundup Ultra herbicide in order to prepare for the planting of Winter wheat. In contrast, the Plaintiff alleges that no conversations ever took place between Moody and himself, prior to the application of the Roundup Ultra herbicide, and that, at all times, he made it clear that his intention was to plant Winter wheat.

This action was commenced by the filing of a Complaint on June 20, 2000. Thereafter, the Plaintiff propounded a variety of discovery requests to the Defendant. The Defendant's objections to several of these discovery requests provide the basis for this

Motion to Compel. For purposes of clarity, we will address each of the disputed discovery requests, in turn.

## II. Discussion

A. Standard of Review. The threshold requirement of discoverability is whether the information sought is "relevant to the subject matter involved in the pending action." Shelton v. American Motors, 805 F.2d 1323, 1326 (8th Cir. 1986). Of course, to be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Federal Rules of Civil Procedure. The standard, therefore, is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts. See, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 382 (8th Cir. 1992); Leighr v. Beverly Enterprises-Kansas, Inc., 164 F.R.D. 550 (D. Kan. 1996); Cox v. E.I. Du Pont de Nemours & Co., 38 F.R.D. 396, 398 (D.S.C. 1965). Notwithstanding the liberality of discovery, however, it is not without bounds. As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to

> produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, supra at 380.

Therefore, despite the liberality of discovery, we will remain reluctant to allow any party to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Carlson Cos., Inc. v. Sperry & Hutchinson Co., 374 F. Supp. 1080, 1089 (D. Minn. 1974); see also, Blum v. Schlegel, 150 F.R.D. 38, 39 (W.D.N.Y. 1993).

B. Legal Analysis.

Interrogatory No. 3: By this Interrogatory, the Plaintiff requests that the Defendant describe all employee bonus, incentive, or reward programs, for which Moody and Glen Kaschmitter ("Kaschmitter")[2] were eligible at the time of the Plaintiff's purchase of Roundup Ultra. According to the Defendant, this information is not relevant. We disagree.

By this discovery request, the Plaintiff is attempting to ascertain whether Moody or Kaschmitter had any financial incentive to accelerate the sale of the Roundup Ultra to the Plaintiff, or to entice the Plaintiff into buying Roundup Ultra herbicide that was

[2]Kaschmitter is an intern who worked for the Defendant and who allegedly participated in the sale of the Roundup Ultra herbicide to the Plaintiff.

not necessary in early June. Bonus, incentive, and reward programs are directly relevant to this issue, and therefore, the requested information should be produced. However, as we expressed at the Hearing, this information is only relevant to the extent that it relates to the period of time during which the sale between Moody, and the Plaintiff, took place. As such, only information relevant to the period from 1996-1999 needs to be provided.

Interrogatory No. 4: In this Interrogatory, the Plaintiff requests that the Defendant produce information about "any dispute or litigation where a claim or allegation was made" that any employee of the Defendant "fraudulently concealed material and substantial facts about any product sold by [the Defendant]." As we expressed at the Hearing, this request is overbroad, and is, therefore, unduly burdensome.

Indisputably, the Defendant is a large corporation that has been in existence for a long period of time, and the Plaintiff's request, as so worded, would require the needless production of a large volume of information that would have no bearing, directly or indirectly, on this litigation. As such, the Defendant need only produce information regarding complaints, that have been reduced to writing, that involve allegations that its employees made false representations, or fraudulently concealed material facts, about Roundup Ultra herbicide.

Interrogatory No. 20: This Interrogatory requests that the Defendant produce information regarding "all complaints made to [the Defendant] by anyone purchasing or using Roundup" that refer to the failure of the herbicide to control the growth of weeds as intended. As we expressed at the Hearing, this Interrogatory overlaps, or is subsumed by, the reformulated Interrogatory No. 4 and, therefore, there is no need for the Defendant to produce additional information, in response to this Interrogatory.

Interrogatory No. 21: This Interrogatory requests that the Defendant identify the quantity of Roundup Ultra herbicide sold in Minnesota, and in the United States, during the previous five years. The Interrogatory also requests that the Defendant identify the yearly profit obtained from those sales. As we noted at the Hearing, this information is clearly not relevant to the Plaintiff's claims, particularly as they relate to the characteristics of Roundup Ultra herbicide, but might relate to a presently unpled claim for punitive damages. Therefore, the discovery requested is irrelevant, and the Motion to Compel is denied.

Document Request No. 1: This Document Request asks the Defendant to produce all documents identified in its Answers to the Plaintiff's interrogatories and Requests for Admissions. At the Hearing, the Defendant averred that all such information, in its possession, has been produced. As we stated in Onwuka v. Federal

Express Corp., 178 F.R.D. 508, 514 n. 2 (D. Minn. 1997), and elsewhere:

> [A]s a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Id. It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, Id., citing, Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995), cert. denied, 516 U.S. 822 (1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993); SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992); Scout v. City of Gordon, 849 F. Supp. 687, 690-91 (D. Neb. 1994); Capellupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989).

Here, we accept the Defendant's representations that it has fully responded to this discovery request, as we have no other means or corroborating its veracity. If we err in this respect, we are not powerless to later cure that error. As such, this aspect of the Plaintiff's Motion to Compel is denied.[3]

---

[3]At the Hearing, the parties agreed that this document request was primarily intended to retrieve documents that refer to the al-
(continued...)

Document Request No. 2: By this request, the Plaintiff seeks to obtain copies of the employee personnel files of Moody and Kaschmitter. As we expressed at the Hearing, much of the information contained within these files is personal, and sensitive in nature, and is not relevant to this action. Further, according to the Defendant, the requested files do not contain any information involving prior allegations of wrongdoing, or customer complaints, involving Moody and Kaschmitter. Consequently, in response to this document request, the Defendant need only produce documents that involve information relevant to the sales activities of Moody and Kaschmitter, or that involve information concerning their relations with their customers.[4]

Document Request No. 4: This request seeks copies of the Defendant's employment and policy manuals which relate to the training of the Defendant's sales personnel. At the Hearing, the Defendant agreed to produce copies of all such brochures and manuals, that are in its possession, and that are responsive to the

---

[3](...continued)
leged conversation between the Plaintiff and Moody. This information is clearly relevant to this litigation and, therefore, the Defendant agreed to produce any records that it possesses which relate to those alleged conversations.

[4]As noted at the Hearing, the parties are directed to "meet and confer" in order to formulate a Confidentiality Agreement to prevent the disclosure of sensitive information to individuals not directly involved in this litigation.

Plaintiff's Document Request. Therefore, we do not address the issue further.

Document Request Nos. 5 and 9: These requests seek information that is allegedly protected by the attorney-client, and work-product privileges. The Defendant has produced a privilege log in order to enable the Plaintiff to evaluate the propriety of the privileges claimed. As we expressed at the Hearing, should the parties, subsequent to a "meet and confer," continue to disagree about the applicability of the asserted privileges, they are free to submit the allegedly privileged documents for our *in camera* review.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to Compel [Docket No. 10] is granted in part, and denied in part, as outlined in the text of this Order.

2. That the Defendant's Motion to Compel [Docket No. 16], is granted in part, as outlined in the text of this Order.

BY THE COURT:

Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE