UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Eugene S. McClellan,

Plaintiff

v. MINUTE ORDER

Pharmacia Corporation,
n/k/a/ Monsanto Company, a
Delaware Corporation,

Defendant. Civ No. 00-1505 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 29th day of November, 2001.

## I. Introduction

On October 19, 2001, the Court heard argument on United Agra Products, Midwest ("UAP"), and Matthew Staloch's ("Staloch's"), Motion to Quash the Subpoena which would allow the reconvening of Staloch's deposition.[1] At the time of the Hearing, the Plaintiff appeared by Paul L. Ratelle, Esq., the Defendant appeared by Wayne K. McNeil, Esq., and nonparties UAP, and Staloch, appeared by Li-anne C. Knych, and Todd A. Suko, Esqs. For reasons we expressed at

---

[1]UAP and Staloch brought this Motion under Rule 26(c), Federal Rules of Civil Procedure 26(c), as a "Motion for a Protective Order," and under Rule 30(d)(4), Federal Rules of Civil Procedure, as a "Motion to Terminate or Limit Examination." However, properly framed, their Motion is to quash a Rule 45 Subpoena, and we will consider the Motion under Rule 45(c)(3), Federal Rules of Civil Procedure, which properly governs our analysis.

FILED NOV 29 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the close of the Hearing, and now formally memorialize, the Motion to Quash is denied.

## II. Factual and Procedural History

This Motion arises out of an earlier deposition of Jeff Patnode ("Patnode"), who is the owner of Aitkin Feed & Seed, which is the retail store from which the Plaintiff purchased the herbicide, Roundup Ultra, which is the source of the Plaintiff's claim against the Defendant. The Plaintiff had spoken with Patnode, who had purportedly advised that he had informed Kris Moody ("Moody"), who is one the Defendant's employees, as to the reason that the Plaintiff wanted to use Roundup Ultra. Later, at his deposition, Patnode testified that he had not relayed this information to Moody. Having relied heavily upon his recollection of Patnode's earlier comment in crafting the fraud allegation which are contained in his Complaints, the Plaintiff sought to inquire as why Patnode's story, at least in the Plaintiff's view, had changed. As a part of that inquiry, the Plaintiff found that UAP, which is the distributor who sold the Defendant's Roundup Ultra to Patnode's Aitkin Feed & Seed, had reduced Patnode's credit limit approximately one month after counsel for the Defendant had interviewed various UAP employees. Counsel for the Plaintiff was intrigued to investigate whether UAP's credit decision, vis-á-vis Patnode, had any legitimate

business basis, or whether it was a tactic that the Defendant fostered in order to influence Patnode's testimony.

On August 6, 2001, the Plaintiff served upon UAP a Subpeona duces tecum for the production of all documentation relating to the sale of Roundup Ultra to Aitkin Feed & Seed, as well a Subpoena for the deposition of Staloch, which was taken on September 12, 2001. During the course of that deposition, the Plaintiff learned that some documents, which were maintained at UAP's offices in Nebraska, had yet to be produced, and he moved this Court to compel their production. In an Order dated September 27, 2001, we granted the Plaintiff's Motion. Further, we advised that, if after the documents were produced, the Plaintiff "wishe[d] to question the UAP deponent on the contents of those documents, the deposition may be reconvened for that limited purpose." Minute Order of September 27, 2001, at 3. UAP produced additional documents to the Plaintiff on October 4, 2001, and the Plaintiff now seeks to reconvene Staloch's deposition so as to question him about those papers.

## III. Discussion

The Plaintiff contends that he should be allowed to reconvene Staloch's deposition, as Staloch may have information concerning UAP's reduction of Patnode's credit limit. In particular, the Plaintiff advises that Bob Phares, who was the UAP employee who actually made the credit decision with respect to Patnode, spoke

with a Doug Johnson, who shares an office with Staloch, concerning that credit determination. The Plaintiff believes that the newly produced documents may refresh Staloch's recollection as to any contemporaneous or subsequent knowledge he may have as the Phares/Johnson conversation, and the Patnode credit reduction decision.

Staloch, as joined by the Defendant,[2] argues that he has already been thoroughly questioned about Patnode's credit line, and that he has consistently denied any knowledge concerning that topic. Specifically, Staloch complains that he has already been deposed for "several hours," did not prepare the documents at issue, and knows nothing about those documents, thereby rendering any further questioning to be abusive, harassing, and unduly burdensome. In the alternative, Staloch requests that, if we allow a recommencement of his deposition, that it be scheduled to occur in, or near, Sauk Centre, Minnesota, where he lives and works, in order that any further inconvenience be minimized.

In pertinent part, Rule 45(c)(3)(A) provides that, "[o]n a timely motion, the court by which a subpoena was issued shall quash

---

[2]We want to make clear that the Defendant's letter dated October 18, 2001, which related to this matter, was not subject to our Order of October 18, 2001, which struck certain documents as to the Plaintiff's previous Motion to Amend Complaint. Accordingly, we have considered the letter of October 18, 2001, in ruling upon the Plaintiff's current Motion.

or modify the subpoena if it * * * (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, [or] is employed or regularly transacts business in person, * * * [or] (iv) subjects a person to undue burden." Staloch and UAP are not parties to this action, and Staloch has previously endured several hours of questioning, and lives over 100 miles from the offices of the Plaintiff's counsel. Further, our review of the documents at issue, and the previous testimony of Staloch, informs us that it is unlikely that a further deposition of him will elicit any additional response from him which will have substantive content. Nevertheless, we elect not to "read tea leaves" and we are wary of "no nothing" averments which, ultimately, prove to be less than candid. Accordingly we will allow a recommencement of the deposition of Staloch, but subject to several preconditions. First, the resumed deposition will be strictly limited to the content of those documents which were produced pursuant to our Order of September 27, 2001, and the Plaintiff is not to repeat, or attempt to clarify, questions that have been previously asked of Staloch. Second, if, as we suspect, Staloch has no knowledge concerning the documents at issue, then the Plaintiff is directed to pay the attorney fees, and related costs, of the attorney for each party, or witness, who properly attends the deposition.

Lastly, Staloch shall not be further inconvenienced by having to travel any substantial distance to the site of the deposition. Therefore, the resumed deposition shall be taken in, or near, Sauk Centre, Minnesota, at a time con-venient to Staloch, and defense counsel.

NOW, THEREFORE, It is --

ORDERED:

That the Motion to Quash the Subpeona of Matthew Staloch [Docket No. 40] is DENIED, and that the Plaintiff is allowed to reconvene the deposition of Staloch subject to the terms of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE