UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * * *

Eugene S. McClelland,

Plaintiff,

v. ORDER

Pharmacia Corporation,
f/k/a/ Monsanto Company, a
Delaware Corporation,

Defendant. Civ No. 00-1505 (PAM/RLE)

* * * * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 29th day of November, 2001.

## I. Introduction

On October 11, 2001, the Court heard argument on the Plaintiff's Motion to Amend his Complaint so as to bring an additional claim in this action. At the time of the Hearing, the Plaintiff appeared by Paul L. Ratelle, Esq., and the Defendant appeared by Wayne K. McNeil, Esq. For reasons which follow, we deny the Plaintiff's Motion to Amend the Complaint.

## II. Factual and Procedural History

This action was originally filed on June 20, 2000. According to the Complaint, Defendant Pharmacia Corporation, f/k/a/ Monsanto Company ("Monsanto"), through its employee and agent, Kris Moody ("Moody"), fraudulently advised the Plaintiff to spray his fields

55

FILED NOV 29 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

with Roundup Ultra ("Roundup"), at a time when it would not provide the protection the Plaintiff needed to plant winter wheat, an intention that, the Plaintiff contends, Moody knew. The Complaint alleges that Moody was aware of the Plaintiff's intentions because he had been specifically told of them by Jeff Patnode ("Patnode"), who is an employee of Aitkin Feed and Farm Supply, where the Plaintiff purchased the Roundup.

Originally, the Complaint alleged three claims. The first Count alleged an action for fraudulent concealment, and claimed that Moody had concealed material facts from the Plaintiff so as to induce him into purchasing Roundup, and into applying the product at a time when it could not produce the desired results. Second, the Complaint alleged a violation of the Minnesota Consumer Fraud Act, Minnesota Statutes Section 325F.68, based upon the same alleged acts of fraud. Lastly, the Complaint contained a respondeat superior claim, which contends that, at all times, Moody was acting in the course of his employment and, as such, Monsanto was liable for Moody's acts.

In a Pretrial Order dated September 27, 2001, the District Court, the Honorable Paul A. Magnuson presiding, established November 1, 2000, as the deadline for amending the pleadings; July 1, 2001, as the deadline for the close of discovery; and September 1, 2001, as the "Ready for Trial" date. On June 12, 2001, we heard

argument on the parties' joint Motion to Extend the deadlines contained in the governing Scheduling Order, and we granted that Motion, in part, such that the discovery deadline was extended to August 15, 2001, and the "Ready for Trial" date was established as November 15, 2001. Thereafter, in a letter dated August 9, 2001, the Plaintiff informally requested a further extension in the discovery deadline for the purpose of completing depositions of certain employees at United Agra Products ("UAP"), which was the distributor of the Roundup that is here at issue. On August 13, 2001, we issued a Minute Order, which granted the Plaintiff's Motion for a limited extension in the discovery deadline, and which directed that the additional depositions be completed by no later than September 7, 2001 -- a date which was later extended, by a later joint request, to September 12, 2001. On September 14, 2001, the Plaintiff filed his Motion to Amend his Complaint, which seeks to add an additional charge of negligent misrepresentation.

III. Discussion

The Plaintiff argues that he has good cause for the requested amendment because he was surprised by the deposition testimony of Patnode, which was obtained in a deposition taken on June 14, 2001, and because the subsequent deposition of two of the Defendant's witnesses has provided him with new facts which support a claim of negligent misrepresentation. The Defendant argues that the facts

underlying the misrepresentation claim were known to the Plaintiff before the Complaint was filed, or at the latest, by June 14, 2001 -- that is, on the date on which Patnode was deposed -- and, as such, the Plaintiff has not shown the good cause required to modify a Pretrial Schedule. Further, the Defendant argues that, because the Plaintiff failed to move to amend his Complaint before the close of discovery, it will be prejudiced by any amendment, as discovery has now closed.

A. Standard of Review. In his Motion, the Plaintiff argued that he should be allowed to amend his Complaint under Rule 15(a), Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasons -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

However, where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). As we have reiterated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district court judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes --1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mentioning therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).[1]

---

[1]Local Rule 16.3 serves to reinforce the need for a party to (continued...)

Our Court of Appeals has emphasized that Rule 16(b) provides the appropriate standard for Motions to Amend pleadings, which arise after the deadline for such Motions has expired, observing as follows:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 974 (8th Cir. 1999), cert. denied, 531 U.S. 873, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rules of Civil Procedure 16(b) specified that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. In re Milk Prods. Antitrust Litigation., 195 F.3d 430, 437 (8th Cir. 1999), cert denied sub nom. Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

---

(...continued)
show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

As was recently expressed, in Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191 (N.D. Iowa 1994):

> A scheduling order is an important tool in controlling litigation. Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 507, 510 (S.D.Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985).

Scheduling Orders have become increasingly critical to the District Court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." Id. The Court in Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system. Accordingly, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

B. Legal Analysis. In support of his Motion to Amend, the Plaintiff urges that allowance of the amendment would cause the Defendant no prejudice, as the basis for the proposed amendment is evidence secured from the Defendant's own witnesses. However, as we have previously explained, "the perception of prejudice, like

beauty, is largely in the eyes of the beholder." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525. "Here, the Defendant can legitimately complain" that, by the Plaintiff's untimely filing of his Motion after the close of discovery, the Defendant is either denied "an opportunity to fully explore the dimensions of the proposed claim, or requires a further delay in the scheduling of a Trial, as discovery on that issue ensues." Id. The Defendant contends that, since there has been no discovery on the "standard of care in the industry," the new claim would require additional discovery, and would postpone the Trial in this action. Defendant's Memorandum in Opposition to Plaintiff's Motion to Amend the Complaint, ("Defendant's Brief"), at 4. "We need not, however, exhaustively examine the issue of prejudice for, as we have already related, Rule 16(b) is driven by 'good cause' on the part of the proponent of a newly formulated claim, and not by a showing of prejudice on the part of the nonmoving party." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525.

The Plaintiff asserts that he has met this standard, and has shown good cause for his untimely Motion to Amend his Complaint. According to the Plaintiff, in formulating the allegations of his Complaint, he had relied upon the expected testimony of Patnode, and he further claims as follows:

> [He could not] have anticipated at the outset of the litigation [that,] almost a year after the cut-off date in the scheduling order for the amendment to pleadings[,] his main witness Patnode would so dramatically change his story when his deposition was finally taken. Up to that point, [the] Plaintiff had every reason to rely on the consistency of Patnode's statements, and that these statements were sufficient to prove [the] Plaintiff's fraud claim against [the] Defendant. There was no need to engage in the "shotgun pleading practice" by asserting in his original Complaint every colorable claim against [the] Defendant.

Plaintiff's Supplemental Brief in Support of His Motion to Amend His Complaint ("Plaintiff's Supplemental Brief"), at 8.

The Plaintiff states that, after Patnode's deposition, he was forced to consider other causes of action which the facts might support, and that it was not until Thomas Kladar (Kladar"), who is the Defendant's expert, and Glen Kaschmitter ("Kaschmitter"), who is a defense witness, were deposed in August of 2001, that he learned of additional facts which would support a claim of negligent misrepresentation. The Plaintiff contends that the testimony of Kladar and Kaschmitter "establish[ed] that Moody was negligent to recommend to [the Plaintiff that he] spray his field in June if his intention was to plant winter wheat," and would have been negligent even if he believed, as he claimed, that the Plaintiff was planting spring wheat. Plaintiff's Memorandum in Support of Motion to Amend His Complaint, ("Plaintiff's Brief") at 3-4. In addition, the Plaintiff contends that Kaschmitter's testimony made

it clear "that Moody should have visited [the Plaintiff's] farm prior to making any recommendation." Id. at 5.

On the other hand, the Defendant argues that the Plaintiff had knowledge of all the facts supporting his claim before they filed the Complaint. The Defendant contends that the Plaintiff knew that Moody had not visited the Plaintiff's farm, and has failed to point to any "facts that became known to him during discovery that triggered his awareness that he may have a claim for negligent misrepresentation." Defendant's Brief, at 4-5.

Although we are not unsympathetic to the effect that Patnode's testimony had upon the Plaintiff's theory of the case, we are unable to find that the Plaintiff has shown "good cause" to amend his Complaint, at this late date, since the Plaintiff has had access to the facts, which support the proposed amendment, since he received Kladar's preliminary expert report in May of 2001.[2] The

---

[2]The reality of litigation is that both the "facts," and the law can change after the commencement of litigation. While we can be sympathetic when facts, which a party believes will be established, prove to be unavailable, that is the sort of risk to which litigants are unavoidably exposed. Were such changes sufficient, without more, to allow the reframing of lawsuits in previously untraveled directions, the imperative of Rule 1, Federal Rules of Civil Procedure, would be a aimless chant. Here, the Plaintiff elected to pursue intentional torts, or State statutory claims, without apparent regard to the negligence claims which, he now maintains, should be asserted. We find nothing before us that so much as suggests that a realistic appraisal of the operative facts, before his first Complaint was filed, would not have uncovered the (continued...)

Plaintiff admits that Kladar did not modify this preliminary report in any manner at his deposition on August 14, 2001. Plaintiff's Supplemental Brief, at 9. In his initial report, Kladar stated:

> To spray Roundup three months prior to planting winter wheat would not control weeds that would emerge after the application. Weeds that would germinated after an application of Roundup in June would have to be sprayed again before tillage could be done prior to planting, unless tillage was carried out throughout the remaining part of the season.

Id. at 5, citing Preliminary Expert Report of Thomas Kladar 5/1/01, at p. 3.

The Plaintiff contends that additional evidence to support his proposed amendment was obtained during Kaschmitter's deposition, in which Kaschmitter "testified that it would have been negligent for Moody to have recommended spraying a field in June if Moody knew that McClelland had intended to plant winter wheat." Plaintiff's Supplemental Brief at 4. During the hearing, the Plaintiff also argued that he had, during the deposition of Kladar, learned the additional fact that it would have been negligent for Moody to recommend spraying the Roundup in June even if he had believed, as he claimed, that the Plaintiff intended to plant spring wheat. However, this again was not new evidence, the Plaintiff had known of this fact since Kladar's expert report of May 11, 2001, in which

---

[2](...continued)
negligence claims that the Plaintiff now identifies and, perhaps, some others.

he opined that, at the time that the Roundup was sprayed, "it was too late to plant spring wheat, or any other crop." Id. at 2, citing Preliminary Expert Report of Thomas Kladar 5/11/01, at 3.

Armed, as early as the Plaintiff was, with the expert opinions of Kladar's preliminary report, we find the Plaintiff's assertion, that he had to wait until Kladar, and Kaschmitter, were deposed, before he could seek to amend his Complaint to be unavailing. At the latest, Kladar's preliminary opinions "should have alerted" the Plaintiff to the possibility of a negligence claim. In re: Milk Products Antitrust Litigation, 195 F.3d 430, 438 (8th Cir. 1999). Moreover, the Plaintiff has an affirmative obligation to timely identify, and assert, those theories of liability which the facts known to him would support, and here, the Plaintiff advances no reason why his own experts, or why he, himself, had not investigated the matter so as to include all viable claims in his original Complaint, or in a timely amendment to that Complaint. Had the Plaintiff utilized the facts of which he knew, or should have known, there would have been no need to seek an amendment, or at least less delay than as would now be generated if his proposed amendment were granted.

The Plaintiff asserts, however, that it was not until after Patnode's deposition, in June of 2001, that he realized the import of the facts which would support a negligence claim, and that it

was not until after the depositions of Kladar, and Kaschmitter, in August of 2001, that he "concluded he could make out a claim for negligence against Monsanto." Plaintiff's Supplemental Brief at 9. The Plaintiff offers no explanation, however, why he needed to await Patnode's purported change of story, before considering the propriety of a negligence claim that had been available to him, if one there be, since before his original Complaint. The Plaintiff's failure to consider other claims, than those he asserted in his original Complaint, based upon blinded reliance on a single assumed set of facts, which had not been reduced to evidentiary standing, fails to constitute "good cause" to allow him to assert new claims so late in this litigation. The Plaintiffs admit:

> Obviously, had [the] Plaintiff known or suspected that Patnode's story, told to the Plaintiff and his counsel prior to the commencement of this litigation, would change so dramatically, Plaintiff would have investigated additional claims available to Plaintiff in this matter prior to commencing this action.

Plaintiff's Supplemental Brief, at 8.

We cannot ignore, however, that the facts which now prompt the Plaintiff's newly proposed negligence claim are not of recent origin, they have been available to the Plaintiff since prior to this litigation. While Patnode's deposition testimony may have suggested the need for a "second string to the Plaintiff's bow" -- the original one having suspected fatal defects -- Patnode's

deposition did not disclose facts, as to a negligence claim, not otherwise available to the Plaintiff. Thus, finding no good cause to allow the belated amendment to his Complaint that the Plaintiff seeks, we deny his Motion to Amend.[3]

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' Motion to Amend the Complaint [Docket No. 27] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

[3]We have indulgently allowed extensions to the discovery deadline in this action, both at the request of the Plaintiff and, on occasion, at the joint request of the parties. The Plaintiff intimates that further discovery should be allowed so as to test the suspicion, that the Plaintiff harbors, that the purported change in Patnode's prior representations to the Plaintiff, and his counsel, were the product of misconduct on the Defendant's part. While the Plaintiff urges that "[t]here appears to be no discernable business reason for UAP to lower Patnode's credit limit," we have reviewed the documents that disclose Patnode's financial circumstances, and they speak volumes. We have allowed the Plaintiff to inquire further on that subject, and we find no basis to allow a further discovery extension as to that topic.