UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eugene S. McClelland,

Plaintiff,

v.

Pharmacia Corporation, f/k/a
Monsanto Company, a
Delaware corporation,

Defendant.

Civil File No. 00-1505 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This case arises from Plaintiff Eugene S. McClelland's suit against Defendant Pharmacia Corporation, f/k/a Monsanto Company ("Monsanto") alleging fraudulent concealment and violations of the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.68 et seq. McClelland contends that Monsanto fraudulently induced him to purchase herbicide by failing to disclose that a June application of the herbicide would not control new weed growth sufficiently to allow McClelland to plant winter wheat in September. This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants Defendant's Motion.

**BACKGROUND**

McClelland is a wheat farmer in Aitkin County who owns approximately 3,600 acres of farmland. In May 1999, McClelland claims that he decided to use the herbicide Roundup

FILED DEC 11 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 11 2001
DEPUTY CLERK

Ultra ("Roundup"), made by Monsanto, to burn down existing and future weeds on his land. McClelland claims that he wanted to reduce weeds in order to plant a winter wheat crop. McClelland arranged to purchase the Roundup from Jeffrey Patnode, a licensed pesticide dealer and the owner of Aitkin Feed and Farm Supply. After arranging for the purchase, McClelland asked Patnode to contact the local Monsanto sales representative to get information about the herbicide's use. McClelland avers that he relied on Patnode to obtain a use recommendation. It is uncontested that Robert Kris Moody, the local Monsanto sales representative, recommended that McClelland apply Roundup in June. Because Roundup is a "burndown" herbicide with no residual effects, it killed the weeds that already had germinated, but it did not prevent new growth prior to McClelland's intended planting date in September. McClelland's alleges that his fields were overrun with weeds and that therefore he was unable to plant his winter wheat. (See Compl. ¶¶ 10 and 19.) On February 22, 2000, however, McClelland filed a 1999 Disaster Program Application with the Department of Agriculture alleging that he did plant a wheat crop but that this crop was destroyed due to excessive rainfall between June and November 1999. (See McClelland Dep. Ex. 3.)

On June 20, 2000, McClelland filed this suit alleging fraudulent concealment and violations of the Minnesota Consumer Fraud Act. In addition to seeking damages for lost profits for an entire season's worth of crops, McClelland requests that Monsanto be required to pay his attorney's fees pursuant to Minnesota's Private Attorney General Statute.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957.

Summary judgment is appropriate in this case because McClelland has failed to proffer a sufficient explanation for the contradiction between his sworn statement in his 1999 Disaster Program Application for crop relief and his claims in this case. In his Disaster Program Application, McClelland claims that he did plant a wheat crop but that this crop was destroyed by excessive rain. In his deposition, McClelland goes on to say that if he

"could have recouped my money there I wouldn't be here with you today." (McClelland Dep. at 78.) In his Complaint, however, McClelland alleges that he was prevented from or unable to plant a wheat crop. (See Compl. ¶¶ 10, 11, 19.)

Courts have long recognized that a plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (citations omitted) (considering without necessarily wholly endorsing a number of cases reaching this conclusion). In Cleveland, the Supreme Court held that a plaintiff who made a claim of total disability for Social Security Disability Insurance ("SSDI") could also make a claim for reasonable accomodation under the ADA. However, that plaintiff could not simply ignore the apparent contradiction between her sworn assertion in her application for disability benefits that she was "unable to work" and her claim under the ADA that she was able to work but was a "qualified individual with a disability." Id. The Court determined that the plaintiff had to "proffer a sufficient explanation" for this apparent contradiction. Id.

While the Court in Cleveland was dealing with a situation where the plaintiff was trying to avoid the consequences of an unfavorable earlier statement, the logic of the case is equally applicable to situations where a plaintiff's subsequent testimony undermines his or her earlier claims. Here, McClelland's only explanations for the apparent contradiction

between his Disaster Program Application and his claims in this case are that he did not fill out the application and that he did not realize that at the time he signed the application that he was certifying the accuracy of the information contained in it. (See McClelland Dep. at 74-75.) Additionally, McClelland argues that his limited education may have prevented him from understanding the contents and import of the application. These explanations are unavailing. McClelland's sworn statement to the Department of Agriculture effectively eviscerates his claim in this matter thereby rendering summary judgment appropriate.

Because the Court has determined that Monsanto's motion for summary judgment should be granted, McClelland's claim for attorney's fees pursuant to Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, subds. 1 and 3a, must also fail.

For the foregoing reasons, and upon all the files, records, and proceedings herein, the Court determines that McClelland's claims fail as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Docs. No. 44 and 45) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 11, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*